UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-533-H

TRAVELERS PROPERTY CASUALTY                                    PLAINTIFFS
COMPANY OF AMERICA, *et al.*

V.

HILLERICH & BRADSBY COMPANY, INC.                              DEFENDANT

**MEMORANDUM OPINION**

Following an understanding reached at a pre-trial conference held on December 15, 2006, Plaintiffs and Defendant present motions for summary judgment on distinct but related issues. Defendant Hillerich and Bradsby Company, Inc. ("Hillerich" or "H&B") has moved for summary judgment on the question of whether Travelers Property Casualty Company of America and Traveler Casualty and Surety Company (collectively "Travelers") was obligated under its duty to defend to pay Hillerich's cost and expenses of defense of the underlying *Baum* litigation for the period prior to the time Travelers commenced doing so under a reservation of rights. Travelers has in turn filed a motion for summary judgment on the question of whether Travelers has the right to obtain reimbursement from Hillerich for Travelers' contribution to the settlement of the underlying *Baum* litigation. For the reasons outlined below, the Court will grant both of these motions.

I.

The Court has previously recited in some detail the facts leading to these motions for summary judgment, so an extensive recitation is unnecessary here. However, a few relevant

facts will be helpful. Hillerich purchased both Commercial General Liability ("CGL") Policies and a Umbrella Policies from Travelers. These policies were renewed annually while the acts relevant to the *Baum* litigation were taking place. Because of the amount in controversy, the umbrella policies were not reached. The CGL Policies provided coverage only for "personal injury" or "advertising injury." The policies further define "advertising injury" as injury "caused by an offense committed in the course of advertising your goods, products, or services." The policies further define "advertising injury as [o]ral or written publication of material that . . . disparages a person's or organization's goods, products, or services." The policies similarly define personal injury as injury, other than "bodily injury" arising from, among several other irrelevant offenses "[o]ral or written publication of material that . . . disparages a person's or organization's goods, products, or services."

    The CGL policies contained two significant restrictions upon on the stated coverage. First, coverage is restricted to situations where an "occurrence" takes place. An occurrence is further defined as "an accident." Second, the policies do not apply for personal injury or advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity."

    The underlying *Baum* litigation commenced when Baum filed its original complaint on July 18, 1998 (the "1998 Complaint"). The central thrust of this complaint was that Hillerich, Easton Sports, Inc. ("Easton"), and Worth, Inc. ("Worth"), all makers of aluminum bats, entered into a conspiracy to maintain the supremacy of their aluminum bats in the American amateur baseball market and committed various acts in furtherance of that conspiracy.

    On November 8, 1999, Baum filed an Amended Complaint (the "First Amended

Complaint"). Travelers declined to provide a defense to either of the first two complaints. However, on January 9, 2001, Baum filed a second amended complaint (the "Second Amended Complaint"). Because "isolated and vague references to the term [disparagement] suggested that a sufficiently specific claim of disparagement *could possibly* arise from discovery in the Underlying Action," Travelers assumed Hillerich's defense costs as of January 9, 2001, under an express reservation of rights. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment at 2. At the close of Plaintiff's evidence at the *Baum* trial, a settlement was reached and Travelers paid Hillerich's share of that settlement, again under an express reservation of rights.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999). If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).

## II.

Under Kentucky law, an insurer has a duty to defend a claim "if there is any allegation which potentially, possibly, or might come within the coverage of the policy." *James Graham Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). Kentucky courts have held that "an ambiguous policy is to be construed to effectuate the purpose of indemnity, and where not ambiguous, the ordinary meaning of the words chosen by the insurer is

3

to be followed." *Id.* (internal citations omitted).  Furthermore, Kentucky courts have held that "terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Id.*  The central issue in Hillerich's motion for summary judgment is whether either the 1998 Complaint or the First Amended Complaint stated a claim for "disparagement."

A.

First, Hillerich argues that Baum alleged disparagement when the 1998 Complaint stated that "[i]n order to carry out their plan to . . . *misrepresent information* . . . that related to the accuracy of the Baum Hitting Machine or the characteristics of the Baum Bat, H&B, Easton, Worth, and [Sporting Goods Manufacturers Association, ("SGMA") of which Hillerich is a member] engaged in a concerted campaign to [complaint alleges a variety of types of conduct not relevant to disparagement]."  "Disparage" is defined as "(1) to lower in rank or reputation; (2) to deprecate by indirect means (as invidious comparison): speak slightingly about."  *See* Merriam-Webster Online, www.m-w.com.

Reading the 1998 Complaint as a whole, the Court does not find allegations of disparagement sufficient to trigger Traveler's duty to defend.  Throughout dozens of paragraphs of factual recitations, Baum alleged no specific act of disparagement, either as it is commonly defined or as it is legally understood.  The single excerpt upon which Hillerich relies is merely a stray phrase in a 142-paragraph Complaint.  True, Kentucky has a liberal stance toward the duty to defend.  The 1998 Complaint, however, does not come close to triggering Traveler's duty to defend.

B.

The next question, therefore, is whether the First Amended Complaint triggered Travelers' duty to defend.  The only portion of it that appears to do so is Paragraph 71, which alleges that "Easton [a co-defendant of Hillerich's in the *Baum* litigation] . . . has embarked on a program to falsely disparage the effectiveness of the Baum Hitting Machine in correspondence to college coaches and institutions . . . ."  Travelers argues that since this allegation was made only against Easton and not directly against Hillerich, the duty to defend was not triggered.

Both the 1998 Complaint and the First Amended Complaint, however, allege a wide-ranging conspiracy between Hillerich, Easton, and Worth to dominate the amateur baseball bat market.  Clearly the allegation of disparagement – even if only made in passing – was part of the alleged broader conspiracy between Hillerich, Easton, and Worth.  Assuming for a moment that the defendants were ultimately found liable for the claims asserted in the First Amended Complaint, Hillerich would be equally liable for the disparagement alleged to have been committed by Easton.  This is the case because in a civil conspiracy, the acts of one co-conspirator are attributable to another, and each co-conspirator is liable for the acts of another.  15A C.J.S. *Conspiracy* § 18.  *See also* Prosser & Keeton on Torts (5th ed. 1984) 323, Section 46 ("All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable").  The Sixth Circuit ruled in a similar case that

> what matters for purposes of determining coverage is the asserted liability of the insured, not whether it committed the wrongful acts. If Smith & Nephew engaged in a conspiracy to defame and maliciously prosecute Reid, then the policy would apply to cover it because Smith & Nephew would be legally obligated to pay damages to Reid, even

5

>though it did not commit any of the overt acts in furtherance of the conspiracy, since a conspirator is held liable for the acts of its co-conspirators.

*Smith & Nephew, Inc. v. Federal Insurance Co.*, 113 Fed. Appx. 99, 103 (6th Cir. 2004).

The Court concludes that even though Baum did not allege directly in its First Amended Complaint that Hillerich disparaged Baum's products, the allegation against Easton was sufficient to trigger Travelers' duty to defend. The Court finds that Travelers is therefore obligated to pay Hillerich's costs of defending the *Baum* litigation beginning on the date of the First Amended Complaint's filing.

### III.

The Court now reaches the underlying and more significant question of whether Hillerich should be forced to reimburse Travelers for the sums paid as part of the *Baum* settlement. A few facts are important at the outset. The settlement was reached under the Second Amended Complaint, filed January 9, 2001. Therefore, it is that document which declares exactly what claims were settled. Furthermore, the parties seem to agree that the only possible theory under which Hillerich could have coverage from Travelers would be if the company was found liable for disparaging Baum's products.

The Second Amended Complaint contains only one count, for interference with business relationships and prospective economic advantage. There is no count for disparagement in the Second Amended Complaint. There are, however, two limited references to disparagement in the 35-page, 97-paragraph Second Amended Complaint. In Paragraph 46, Baum alleged that "[a]fter Baum invented the Baum Hitting Machine to test the speed of a ball coming off of a bat, [Easton, Hillerich, and Worth] and SGMA falsely disparaged it to prevent its use." In Paragraph 70, Baum alleged that

> [t]he fraudulent conduct of the Defendants included material misrepresentations of fact to the NCAA and its member institution and coaches and other amateur institutions and coaches and members and other users, purchasers and consumers of bats during the relevant period that . . . (7) the Baum Hitting Machine was not an effective method for measuring bat performance, which was untrue, and falsely disparaging the BHM.

From this rather limited information, the Court must determine whether disparagement, as alleged in the Second Amended Complaint, was actually a basis for the settlement.

During trial, plaintiffs presented their entire case-in-chief over the course of forty trial days. At the close of that evidence, the defendants moved for a judgment as a matter of law seeking, which would have resulted in dismissal of the single count of interference with business relationships and prospective economic advantage. Judge Avern Cohn presided over the trial in the United States District Court for the Eastern District of Michigan, and consequently was intimately familiar with the evidence presented by Baum at the trial. During oral argument on the motion, Judge Cohn said that several remarks that shed light on whether Baum actually presented a valid claim for "disparagement of the [Baum Hitting Machine] or an attack on the machine is not an issue in this case . . . I have made a ruling, there is no disparagement of the Baum Hitting Machine as an act of tortious interference in this case." To say the least, this demonstrates Judge Cohn's view of the real legal claims at issue.

Subsequently, Judge Cohn denied the defendants' motion for judgment as a matter of law in its entirety. His opinion also briefly summarized the evidence presented by the plaintiffs "in the interest of trying to define the nature of the case put by plaintiff." *Baum Research and Development Co., Inc. v. Hillerich and Bradsby Co. et al.*, No. 98-72946 at 6 (E.D. Mich. filed Mar. 16, 2005). Judge Cohn made no mention of any claim for disparagement in this opinion.

Travelers initiated this declaratory judgment action in the Eastern District of Michigan

and the case was assigned to Judge Cohn. Hillerich moved to transfer to this Court, which Judge

Cohn ultimately granted. During the hearing granting that motion, Judge Cohn stated:

> I said something in the course of trial that Travelers grabbed onto to exclude themselves from coverage . . . I don't think there is anything that I said that was not a ruling [sic], and you always have to be very careful when a judge is making comments from the bench, particularly at the conclusion of the case . . . The determination of whether or not this case is entitled to coverage goes well beyond anything that I said at that moment in time.

It is not entirely clear to the Court what it should make of Judge Cohn's various comments. It is certain that he had not considered whether a particular insurance policy covered a particular claim and he did not want his comments to be considered otherwise.

What remains clear is that after hearing forty trial days of testimony, Judge Cohn seemed convinced that Plaintiffs had proven no claim of disparagement at trial. Judge Cohn's subsequent comments during the hearing on Hillerich's motion to transfer do not contradict that opinion. Judge Cohn simply may have meant that he had yet to examine the policies issued by Travelers, and that therefore the "determination of whether or not this case is entitled to coverage" would require the transferee court to examine the policies and make such a decision. Although Hillerich asserts that the operative complaint alone – here, the Second Amended Complaint – should control, the fact is that Baum presented evidence for eight weeks and did not present – in the opinion of Judge Cohn – sufficient evidence of disparagement. Pleading does not control the ultimate coverage in this case – the evidence does. Here, the evidence does not support a claim of disparagement.

Travelers took the proper course of action: it paid the settlement demand under a reservation of rights because not to do so would have both harmed its own insured and subjected

itself to claims of bad faith.  Then, as is their right, they requested this Court to determine their actual legal responsibility.  Because this Court now finds that Travelers was not obligated to indemnify Hillerich under its policies and that therefore Travelers is entitled to reimbursement for the funds it contributed to the Baum settlement.

   The Court will enter an order consistent with this Memorandum Opinion.

cc:  Counsel of Record